# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOSEPH TARMO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:25-cv-109 |
| v. | § | Judge Mazzant |
| | § | |
| DETECTIVE GREG NOSEFF, et al., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following four motions (the "Motions"):

(a)   Individual Defendants, Detective Greg Noseff, Officer Byrd, and Detective Hall's, Motion to Dismiss for Failure to State a Claim and Pursuant to their Qualified Immunity and Brief in Support Thereof (Dkt. #20);

(b)   Defendant City of Lake Dallas's Motion to Dismiss and Brief in Support Thereof (Dkt. #21);

(c)   Defendant City of Denton, Texas's Rule 12(b)(6) Motion to Dismiss Plaintiff Joseph Tarmo's First Amended Complaint (Dkt. #23); and

(d)   Plaintiff's Motion for Leave to File Second Amended Complaint to add Required Party and to add Facts Based on New Evidence (the "Leave to Amend Motion") (Dkt. #34).

Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds that the Leave to Amend Motion should be **GRANTED** and that the remaining Motions should be **GRANTED in part and DENIED in part**.

## BACKGROUND

The case before the Court involves multiple interactions between Plaintiff and various agents and cities of the State of Texas. In the twin interests of brevity and transparency, the Court divides the facts of this case between two distinct prosecutions.

## I.    DWI Prosecution

On April 7, 2021, Plaintiff was operating a vehicle on the streets of Denton, Texas (the "City of Denton"). As Plaintiff "slowly" drove through the city, he eventually hit his turn signal as he approached an alternate street (*See* Dkt. #38 at ¶ 24). Despite Plaintiff's reduced speed, Plaintiff missed his turn and decided to decelerate even further (Dkt. #38 at ¶ 24). Unbeknownst to Plaintiff, he was driving in front of multiple police officers, including one Officer Weinstein, who allegedly suspected he might be intoxicated (Dkt. #38 at ¶ 25). One thing led to another, and Plaintiff soon found himself rolling down his car window to address the officers. Plaintiff alleges that the following interaction betrayed "no physical signs of intoxication" (Dkt. #38 at ¶ 25). Nevertheless, Plaintiff was ultimately detained, arrested, and placed in handcuffs that were tight enough to make his hands bleed and swell (Dkt. #38 at ¶ 25). Plaintiff's night did not end there, however, as he was then taken to a local hospital for a blood test before being released on bond with a pending DWI charge (Dkt. #38 at ¶ 26).

Almost one month later, on May 1, 2021, the blood test was processed and indicated that Plaintiff was sober on the day of the arrest (Dkt. #38 at ¶ 28). Although both Weinstein and the City of Denton had access to the results of the blood test, Plaintiff remained on bond for almost one year, until the DWI charge was revived on April 5, 2022 (Dkt. #38 at ¶ 27). Plaintiff was subsequently presented to a magistrate on August 10, 2023 (Dkt. #38 at ¶ 29). Plaintiff's prosecution continued until the charge was eventually dismissed in March 2024 (Dkt. #38 at ¶ 28).

## II.    Sexual Assault Prosecution

On February 8, 2022, while Plaintiff was still on bond for his alleged DWI infraction, a man reported to the Lake Dallas Police Department that his 16-year-old daughter had been sexually assaulted by an unnamed individual within the City of Lake Dallas (*See* Dkt. #38 at ¶ 30; Dkt. #17-1

2

at p. 15). Shortly thereafter, Lake Dallas Police Officer Jewelia Byrd took the statements of the father and his daughter (hereinafter referred to as either "the victim" or "H") and accompanied them to Denton Presbyterian Hospital, where H was cared for by a sexual assault nurse examiner (Dkt. #17-1 at p. 15; Dkt. #20 at p. 11).

The following day, on February 9, 2022, H was forensically interviewed, and, according to Detective Greg Noseff of the City of Lake Dallas, H reported that she had participated in consensual sex with an individual at a social gathering before "the suspect later identified as [Plaintiff] came into the room and sat down on the bed and began talking to her" (Dkt. #17-1 at p. 19). Noseff's affidavit further alleged that Plaintiff asked H "if she liked black guys" before repeatedly sexually assaulting her (Dkt. #38 at ¶¶ 43, 51).[1] Following a finding of probable cause by an independent magistrate, a warrant for Plaintiff's arrest was issued on March 9, 2022 (*See* Dkt. #38 at ¶ 56). Plaintiff would only find out about the outstanding warrant for his arrest almost one month later, on April 5, 2022, when one of his business clients informed him that the Denton County Police Department was actively distributing warnings that he was wanted "for allegedly sexually assaulting a child" (Dkt. #38 at ¶ 56). Confused, Plaintiff visited the Denton County Police Department "with his father and sister, to inquire about the validity of the warrant and to clear his good name" (Dkt. #38 at ¶ 57). It was there that he "offered to have a DNA test taken" before he was quickly arrested and detained without bond (Dkt. #38 at ¶ 58).

On April 6, 2022, Noseff visited Plaintiff's cell with a DNA collection kit in hand. There, he "took two buccal swabs of Plaintiff's epithelial cells from Plaintiff's cheeks for male DNA comparison" without a search warrant (Dkt. #38 at ¶ 59). The next day, on April 7, 2022, Noseff

---

[1] As addressed in greater detail below, Plaintiff alleges that Noseff filed multiple affidavits, and that those affidavits varied in their description of the conversation between Plaintiff and H in each iteration (*See* Dkt. #38 at ¶ 39).

filed an Affidavit for Search Warrant to authorize a search of Plaintiff's person for DNA evidence, which was granted and fulfilled before sundown (Dkt. #38 ¶¶ 47, 51, 60). Plaintiff remained in custody for a total of 126 days thereafter, until he was placed on bond on August 11, 2022 (Dkt. #38 at ¶ 61). The prosecution continued after Plaintiff was released from custody, and Plaintiff was unable to find employment (Dkt. #38 at ¶ 64). Plaintiff later learned that his likeness, full name, and arrest history had been posted on "crimestoppers.com" (Dkt. #38 at ¶ 63). Plaintiff would also endure "Facebook posts accusing him of [the] sexual assault of a child" and similar negative consequences, which allegedly rendered him unable to successfully apply to attend universities and certain soccer camps in Europe (Dkt. #38 at ¶ 65).

Due to allegedly "false testimony" provided by Noseff and other officers, Plaintiff was indicted by a grand jury on February 24, 2023 (Dkt. #38 at ¶ 72). According to Plaintiff, Defendants failed to properly serve him with a notice of trial setting, and Plaintiff consequently failed to appear in court (Dkt. #38 at ¶ 73). As a result, Plaintiff was arrested and momentarily returned to jail, where he remained from June 26, 2023, to June 28, 2023 (Dkt. #38 at ¶ 73). Months later, on January 3, 2024, Plaintiff was arrested once again for "violating his bond" and was released later that same day (Dkt. #38 at ¶ 75). On February 16, 2024, the sexual assault charge was dismissed when Plaintiff's defense counsel "was able to force the court" to view certain DNA evidence despite "the City of Lake Dallas's *Brady* non-disclosure custom" (Dkt. #38 at ¶¶ 79–80, 82).

## III.    The Aftermath

Plaintiff alleges that Defendants worked together to bring about the destruction of "his relationship with his fiancé, friends, coworkers, business partners and intermediaries," and that their actions ultimately reduced him to homelessness (Dkt. #38 at ¶ 85). Plaintiff has since been

"diagnosed with long-term or permanent major depressive disorder, anxiety, and PTSD, and is [currently] being treated by Denton County MHMR" (Dkt. #38 at ¶ 86).

On February 6, 2025, Plaintiff sued (a) Detectives Noseff and Hall; (b) Officer Byrd; and (c) the City of Lake Dallas and the City of Denton (Dkt. #1). Specifically, Plaintiff alleges the following causes of action against a variety of Defendants:

(a)    42 U.S.C. § 1983 malicious prosecution under the Fourth Amendment (Dkt. #38 at ¶¶ 88–94);

(b)    42 U.S.C. § 1983 false arrest under the Fourth Amendment (Dkt. #38 at ¶¶ 109–116);

(c)    42 U.S.C. § 1983 false imprisonment under the Fourth Amendment (Dkt. #38 at ¶¶ 95–99);

(d)    42 U.S.C. § 1983 due process right to liberty violation under the Fourteenth Amendment (Dkt. #38 at ¶¶ 106–108);

(e)    42 U.S.C. § 1983 Sixth Amendment violation (Dkt. #38 at ¶¶ 100–105); and

(f)    Suit against all individual Defendants in their official capacities (Dkt. #38 at ¶ 6).

Over a month later, Plaintiff filed his First Amended Complaint (Dkt. #17). Defendants quickly filed three motions to dismiss (Dkt. #20; Dkt. #21; Dkt. #23). Following multiple extensions of time to file a response, Plaintiff filed his Leave to Amend Motion and his responses to each motion to dismiss (Dkt. #34; Dkt. #35; Dkt. #36; Dkt. #37). Plaintiff later filed his Second Amended Complaint and added Officer Weinstein as a Defendant (Dkt. #38). Defendants filed their replies to each response (Dkt. #39; Dkt. #40; Dkt. #41) and filed their responses to Plaintiff's Leave to Amend Motion (Dkt. #42; Dkt. #44). Plaintiff replied to Defendants' responses regarding his Leave to Amend Motion (Dkt. #46; Dkt. #47). Finally, Defendants City of Lake Dallas, Noseff, Byrd, and Hall filed their sur-reply to Plaintiff's Leave to Amend Motion (Dkt. #48).

## LEGAL STANDARD

### I.    Leave to Amend

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 420 (5th Cir. 2013) (per curiam) (unpublished). Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. *See id*. Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 868 (5th Cir. 2010) (per curiam) (unpublished) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id*. Rule 15(a) instructs the court to "freely give leave when justice so requires." *Id*. The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (citing *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir. 1986)). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments;

6

(4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## II.    Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and

7

disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I.    Good Cause and Leave to Amend

The Court first addresses whether there is good cause to grant Plaintiff leave to amend his pleadings under Rule 15(a)(2). *See Peralez v. Express Drilling Fluids, LLC*, No. 2:18-CV-00032, 2018 WL 2985884, at *2 (S.D. Tex. Apr. 18, 2018). Pertinent to this analysis are the five factors listed above: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *See EMC*, 393 F.3d at 595.

Plaintiff's proposed amendment seeks to (a) add an additional officer, Weinstein, as a defendant; (b) add additional evidence related to Plaintiff's malicious prosecution claim; and (c) describe in greater detail the allegations listed in the First Amended Complaint (*See* Dkt. #34 at pp. 2–3). Defendants argue that good cause to amend does not exist in light of three issues: (a) Plaintiff's repeated dilatory tactics; (b) Defendants' prejudice; and (c) general futility. Because

8

none of these issues are sufficient to defeat Plaintiff's showing of good cause, the Court will grant Plaintiff leave to amend his pleadings.

### A.    Plaintiff's Delay

"Undue delay justifies a district court's decision to deny leave to amend." *Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001). No party contests the fact that Plaintiff filed his First Amended Complaint after his receipt of a motion to dismiss (*See* Dkt. #42 at pp. 4–5). Nor do the parties contest the fact that Plaintiff has sought and received four extensions to respond to Defendants' motions to dismiss (Dkt. #26; Dkt. #28; Dkt. #30; Dkt. #32). Prior to requesting leave to amend for a second time, Plaintiff also averred that he would "not seek any additional extensions of time regarding these [responsive] motions" (Dkt. #32 at p. 3). Plaintiff, true to his word, subsequently filed his Second Amended Complaint along with multiple responses to the motions to dismiss. Coincidentally, Plaintiff's responses were based almost entirely on his proposed Second Amended Complaint (*See* Dkt. #35; Dkt. #36; Dkt. #37).

The Court is not blind to Plaintiff's delay in seeking leave to amend his complaint—but that delay was not undue. "[D]elay alone is an insufficient basis for denial of leave to amend; [t]he delay must be *undue*, i.e., it must prejudice the non[-]moving party or impose unwarranted burdens on the court." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 186 (5th Cir. 2018) (citation modified) (emphasis added). Considering the prior extensions were based on personal health issues suffered by Plaintiff's counsel, the Court finds that Plaintiff has acted with appropriate speed in proposing a second amended complaint in the face of Defendants' motions to dismiss. The Court therefore declines to deny leave to amend on this ground.

### B.      Prejudice to Defendants

"Denial of leave to amend may be required when allowing an amendment would cause undue prejudice to the opposing party." *Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996). "An amendment is more likely to be prejudicial when it fundamentally alters the nature of the case instead of clarifying existing allegations or adding new claims based on the same underlying facts." *DW Volbleu, LLC v. Honda Aircraft Co., LLC*, No. 4:21-CV-637-SDJ, 2024 WL 169569, at *5 (E.D. Tex. Jan. 16, 2024). Here, Plaintiff's proposed amendment seeks to clarify rather than reinvent or reimagine the allegations contained in his live complaint. Although this clarification will necessarily have a negative impact on the relevance of Defendants' many motions to dismiss, its influence is not so negative as to wholly invalidate Plaintiff's requested leave to amend. Thus, the Court also declines to deny leave to amend on this ground.

### C.      Futility

"If the amendment would be futile, it may be disallowed." *Davis v. La. State Univ.*, 876 F.2d 412, 413 (5th Cir. 1989). However, "it does not appear beyond doubt that no set of facts would entitle Plaintiff to relief. The [C]ourt therefore finds that amendment of the complaint would not be futile . . . ." *Evans v. E. Tex. Fam. Med., PA*, No. 6:22-CV-00374-JDK, 2023 WL 2942209, at *5 (E.D. Tex. Feb. 8, 2023), *report and recommendation adopted*, No. 6:22-CV-374-JDK, 2023 WL 2327452 (E.D. Tex. Mar. 2, 2023). As discussed in greater detail below, Weinstein's addition to this case is not barred by the relevant statute of limitations for either malicious prosecution or false arrest, and the facts surrounding this case indicate that his addition is not improper. Thus, the

Court hereby grants Plaintiff's Leave to Amend Motion (Dkt. #34) and will consider only the assertions listed in his Second Amended Complaint (Dkt. #38) going forward.[2]

## II.     *Monell* Claims

Plaintiff makes little distinction between individual and municipal defendants in his Second Amended Complaint. Nevertheless, the document clearly alleges that the City of Denton and the City of Lake Dallas and are each liable under 42 U.S.C. § 1983 for various violations of Plaintiff's constitutional rights (Dkt. #38 ¶¶ 88–116). Section 1983 creates a cause of action against a person who, acting under the color of state law, deprives another of a constitutionally or federally protected right, privilege, or immunity. When the statute was originally passed, municipalities were generally not considered "persons" acting under the color of state law and enjoyed immunity from suit. However, in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipal government could be liable under § 1983 when a municipal's official policy or custom causes a violation of a constitutional right. Following that landmark decision, a plaintiff must prove three elements to establish municipal liability under Section 1983: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). An official policy can be shown in several ways. It can arise by a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by governing body officers" or by a "persistent, widespread practice"

---

[2]  Plaintiff's Second Amended Complaint is deemed filed. Furthermore, because of the limited nature of Plaintiff's amendment, the Court will consider Defendants' motions to dismiss rather than mooting them outright.

that is "so common and well settled as to constitute a custom." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

### A. *Monell* claims against the City of Denton

Plaintiff alleges that the City of Denton (or, for this section, the "City") is liable for malicious prosecution and false arrest under the Fourth Amendment (Dkt. #38 at ¶¶ 88, 96, 109). Plaintiff also raises a Fourteenth Amendment claim against the City (Dkt. #38 at ¶ 106).

Plaintiff centers his *Monell* claims against the City of Denton on its approval of a specific policy known as the "Driving While Intoxicated Strategic Plan" (the "DWIS Plan"). Plaintiff alleges that the DWIS Plan "rewards officers through annual evaluations for arrests and successful prosecutions of DWI charges" and tracks acquittals when "officer performance attributed [sic] to the result" (Dkt. #38 at ¶ 9; Dkt. #37 at p. 16). Plaintiff points to evidence attached to his Second Amended Complaint which indicates that Weinstein, the officer who arrested Plaintiff on April 7, 2021, was subsequently recognized for "leading the department with 55 [DWI] cases" and received the Chief's Commendation and Excellence in Policing Award for his efforts under the DWIS Plan (Dkt. #38-26 at p. 5; Dkt. #37 at p. 17).

In its motion to dismiss, the City of Denton argues that "mere identification of a City policy" alongside "vague and conclusory allegations pertaining to [Plaintiff's] alleged constitutional violations" are insufficient to establish a plausible § 1983 claim (Dkt. #23 at p. 9). In essence, the City argues that the identified policy cannot support the third element of a *Monell* claim: that the municipality was the "moving force" behind the injury alleged. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

"Moving force" causation is a two-part obligation. First, a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* "[I]n

12

order to demonstrate a direct causal link, the connection between the municipal policy and the constitutional injury "must be more than a mere 'but for' coupling . . . . [it] must be the actual cause of the constitutional violation." *Saenz v. City of El Paso*, No. EP-14-CV-244-PRM, 2015 WL 4590320, at *7 (W.D. Tex. Jan. 26, 2015) (quoting *Valle*, 613 F.3d at 546). Second, a plaintiff must show that "the municipal action was taken with the requisite degree of culpability." *Valle*, 613 F.3d at 542. A proper showing under the second element will "demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997)); *see Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (noting that *Monell* plaintiffs must "establish both the causal link ('moving force') and the city's degree of culpability ('deliberate indifference' to federally protected rights)" to prevail). "Even a showing of heightened negligence is insufficient to show the deliberate indifference needed to prove municipal liability." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). Plaintiff has not sufficiently alleged or shown that the DWIS Plan served as the moving force behind the constitutional violations at issue—i.e., that his "injuries resulted from the execution of the official policy," and that a municipal decision by the City of Denton reflected a "deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *Valle*, 613 F.3d at 542.

Plaintiff has not pleaded specific facts to support the existence of a direct causal link between the DWIS Plan and either (a) his arrest for DWI, or (b) his prosecution for DWI. Instead, Plaintiff has at best succeeded in labeling the DWIS Plan a mere but-for cause of his alleged constitutional violations, "which is insufficient to establish moving-force causation." *Zeng v. City*

13

*of Joshua*, No. 3:23-CV-1570-D, 2025 WL 847885, at *4 (N.D. Tex. Mar. 18, 2025). Although Plaintiff is not expected to prove his theory of municipal liability at the motion to dismiss stage, he must offer some support for the direct causation behind his alleged constitutional violation in order to "nudge[ ] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The inability to do so is fatal to his *Monell* claims.

First, regarding Officer Weinstein's initial interaction with Plaintiff, Plaintiff's Second Amended Complaint notes that Plaintiff was "driving slowly" and "missed a turn" prior to his DWI arrest (Dkt. #38 at ¶ 25). In the absence of any specific facts connecting the arrest to the DWIS Plan as opposed to any other conceivable factor, the mere fact that "Weinstein [has] benefited from his numerous DWI arrests pursuant to the DWI policy" is not enough to support an allegation that the DWIS Plan exists as the direct, rather than a but-for, cause of Plaintiff's particular DWI arrest (Dkt. #38 at ¶ 14). *See Birabil v. Martinez*, No. 3:15-CV-2255-M, 2016 WL 4402259, at *6 (N.D. Tex. July 11, 2016) (holding that a plaintiff failed to plead specific facts in support of direct causation because he merely alleged that "Defendant City of Dallas had a policy and custom in place that *enabled*" constitutional violations), *report and recommendation adopted*, No. 3:15-CV-2255-M, 2016 WL 4411412 (N.D. Tex. Aug. 18, 2016); *see also Jimenez v. City of New York*, No. 14 CIV. 02994 SAS, 2014 WL 5089392, at *5 (S.D.N.Y. Oct. 9, 2014) (finding that a "quota and productivity policy" that allegedly encouraged unlawful stops and false arrests was not supported by enough facts to be considered the "moving force" behind a plaintiff's arrest and subsequent prosecution).

Further, while the DWIS Plan facilitated Weinstein's public recognition for "leading the department with 55 [DWI] cases," that fact alone is insufficient to show that the DWIS Plan was

14

the "catalyst" for Plaintiff's injury as opposed to a mere "contributing factor" or necessary consequence of the arrest and the actions that followed (Dkt. #38-26 at p. 5). *Thompson v. City of Dallas*, No. 3:23-CV-2056-L, 2024 WL 4999193, at *3 (N.D. Tex. Sept. 23, 2024) (citation modified) (quoting *Johnson v. Cook County*, 526 F. App'x 692, 695–96 (7th Cir. 2013) (per curiam)), *report and recommendation adopted*, No. 3:23-CV-2056-L, 2024 WL 4648155 (N.D. Tex. Oct. 31, 2024). In other words, the fact that Weinstein was commended for his participation in DWI arrests is not, by itself, sufficient to support any alleged direct causation between Plaintiff's arrest and the DWIS Plan. While Weinstein may have considered the natural repercussions of his actions prior to arresting Plaintiff, the allegation that Weinstein's violation of Plaintiff's rights was merely "consistent with . . . the DWI policy of City [sic] of Denton" is simply not indicative of the direct causation required to state a valid *Monell* claim in this Circuit (Dkt. #38 at ¶ 23).

Second, Plaintiff has not alleged any specific facts to suggest that the DWIS Plan influenced the City of Denton or Weinstein to maliciously prosecute or withhold exculpatory information from Plaintiff. Instead, the Second Amended Complaint contains nondescript and theoretical summaries of the issue:

> [The DWIS Plan] penalizes unsuccessful prosecutions . . . [which] caus[ed] Weinstein to act with deliberate indifference to retain meritless prosecutions . . . with a view to being rewarded [sic] under the . . . Policy, whilst avoiding negative annual evaluations for unsuccessful DWI prosecutions which the City of Denton attributes to officers' performance upon the arrestee's acquittal. . . . [B]ecause of the DWI Policy . . . the City of Denton and Weinstein never disclosed the blood test results and left open a charge of driving while intoxicated.

(Dkt. #38 at ¶¶ 12, 27).

There are no facts listed in the Second Amended Complaint to support the allegation that the DWIS Plan penalizes officers for unsuccessful prosecutions and thus encourages officers to

15

extend prosecutions or withhold exculpatory evidence. Plaintiff centers his argument on the following language in the DWIS Plan: "[s]upervisor tracks all acquittals to determine how officer performance attributed to the result" (Dkt. #38-13 at p. 7). This language is insufficient to provide factual support to his allegations, as the sentence does not indicate that officers are punished for their failure to see a criminal prosecution through to trial—it merely indicates that the supervisor will analyze officer performance under certain circumstances. Nor does the sentence facially encourage officers to suppress, tamper with, or destroy exculpatory evidence. The plain language of the DWIS Plan instead appears to describe a standard system of operation intended to increase the efficiency of the local police force and minimize an officer's negative impact on acquittals.

Even if the DWIS Plan contained information related to the punishment of officers following certain acquittals, the Second Amended Complaint does not allege that Weinstein's "officer performance" in interacting with Plaintiff contributed to Plaintiff's acquittal such that Weinstein would be incentivized under the DWIS Plan to take action to extend Plaintiff's prosecution. It also does not allege that Weinstein was attempting to maliciously prosecute Plaintiff to cover up some heinous pre-arrest act. Rather, the live pleading offers nothing but conclusory and boilerplate phrases to tie Weinstein's treatment of exculpatory evidence to the DWIS Plan: "the policy . . . caus[ed] Weinstein to act with deliberate indifference to retain meritless prosecutions, whilst avoiding negative annual evaluations for unsuccessful DWI prosecution" (Dkt. #38 at ¶ 12).

Considering that Plaintiff is expected to plead specific facts to support a causation standard beyond "but-for" at this stage, Plaintiff's vague allegations are insufficient to state a claim to relief under *Monell* that is plausible on its face. *See, e.g.*, *Harmon v. City of Arlington*, 478 F. Supp. 3d 561,

575 (N.D. Tex. 2020), *aff'd*, 16 F.4th 1159 (5th Cir. 2021) (dismissing a *Monell* claim upon finding that a plaintiff's "insinuations do not meet the required standard of alleging a direct causal relationship at a level surpassing a mere but-for coupling of cause and effect"). As the Fifth Circuit has previously opined, "[t]he bar to survive a motion to dismiss is low, but not that low. On the face of these allegations, [the Court] cannot say that it is plausible that the county's policy, as distinguished from the isolated acts of the employees . . . was responsible for what happened to [the plaintiff]." *Martinez v. Nueces County*, 71 F.4th 385, 390 (5th Cir. 2023). Absent specific facts suggesting any direct causation between Plaintiff's treatment and the DWIS Plan, a policy that merely recognizes officer performance while attempting to minimize officer error in the face of acquittals is too attenuated to constitute the moving force behind Plaintiff's claims.

Even if Plaintiff had sufficiently pleaded that the DWIS Plan constituted a direct cause of his DWI arrest and subsequent prosecution, however, Plaintiff has still not sufficiently alleged that the policy was "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Skyy v. City of Arlington*, 712 F. App'x 396, 399 (5th Cir. 2017) (per curiam) (unpublished) (quoting *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009)). Although Plaintiff has used the term "deliberate indifference" to describe the City's actions, such "boilerplate allegation[s] . . . simply do[] not clear the pleading hurdle for *Monell* claims." *Wilkinson v. Humble Indep. Sch. Dist.*, No. 4:23-CV-3444, 2024 WL 2922402, at *4 (S.D. Tex. June 10, 2024). In *Skyy*, the Fifth Circuit affirmed a district court's decision to grant a Rule 12(b)(6) motion to dismiss in part because plaintiffs had failed to allege any facts beyond a single incident to "demonstrate . . . deliberate indifference." 712 F. App'x at 401. A similar Fifth Circuit opinion, *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004),

17

affirmed a district court's identical ruling after it held that a plaintiff had failed to plead "that there had ever been any similar incidents (or allege any other facts suggesting that the alleged policy was adopted or maintained with deliberate indifference to constitutional rights)." *Skyy*, 712 F. App'x at 401 (quoting *Johnson*, 379 F.3d at 309–10).

Here, Plaintiff bases his deliberate indifference argument on a single statistic: that in 2021, the year of Plaintiff's arrest, only 4.74% DWI arrests resulted in a "favorable disposition for the city" (*See* Dkt. #38 at ¶ 13). Plaintiff argues that this discrepancy alone highlights Defendant City of Denton's deliberate indifference to the alleged unconstitutional outcome of its DWIS Plan. However, that statistic offers no factual support to the issue at hand. Instead, it misses the issue entirely, as arrests that do not result in convictions or guilty pleas are not presumptively unconstitutional. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (holding that the absence of a conviction on a charge is irrelevant to a claim of an unconstitutional false arrest because the claim focuses on "the validity of the arrest" and not "the validity of each individual charge"); *Trevino v. City of Austin*, No. 1:21-CV-187-RP, 2023 WL 2056042, at *4 (W.D. Tex. Jan. 24, 2023) (noting that "[t]he mere fact that these charges did not end in a conviction does not mean the arrest necessarily violated [the plaintiff's] constitutional rights"), *aff'd*, No. 23-50118, 2024 WL 1070968 (5th Cir. Mar. 12, 2024). The constitutionality of any given arrest generally lies in probable cause, not conviction. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment . . . .").

After setting aside Plaintiff's misplaced reliance on statistics, the Court finds that Plaintiff has failed to allege a single fact to support a pattern of similar constitutional violations created by the DWIS Plan such that Defendant City of Denton had "constructive or actual notice of such

violations . . . as to reflect [its] deliberate indifference." *Davis v. City of New Orleans*, No. CV 24-1870, 2025 WL 1837468, at \*9 (E.D. La. July 3, 2025). In the absence of any other facts, cases, convictions, or even a single specific example of a similar constitutional violation, the Court finds that Plaintiff has not sufficiently pleaded that the DWIS Plan was the moving force behind his alleged constitutional violations, and that his *Monell* claims against the City must be dismissed. *Cf. id.* (noting the importance of plaintiff's list of 30 specific convictions "in which a [similar constitutional] violation was subsequently found" and finding that the list was sufficient to support the plaintiff's *Monell* claim against a motion to dismiss); *see Skyy* 712 F. App'x at 401.

### B.    *Monell* claims against the City of Lake Dallas

Plaintiff alleges that the City of Lake Dallas (or, for this section, the "City") is liable for malicious prosecution and false imprisonment under the Fourth Amendment (Dkt. #38 at ¶¶ 88, 96). Plaintiff also raises a Sixth and Fourteenth Amendment violation against the City (Dkt. #38 at ¶ 101).

Plaintiff's *Monell* claims against the City of Lake Dallas are not centered on a relevant "policy statement" or related regulation, but instead rely upon the existence of a verbal "*Brady* non-disclosure custom" related to the City's handling of exculpatory evidence (*See, e.g.*, Dkt. #38 at ¶ 104). Plaintiff describes the alleged custom as "[a]n unwritten policy and practice of withholding and refusing to disclose any evidence that is favorable to a criminal defendant for years at a time for the sole purpose of continuing prosecution upon arrest" (Dkt. #38 at p. 5 n.3). This allegation is distinct from other *Monell* claims raised by plaintiffs related to exculpatory evidence, as Plaintiff does not argue that the City merely failed to take action such as "institut[ing] any policies to ensure that all exculpatory evidence was delivered to the district attorney's office and copied, so that it could be produced to criminal defendants." *Stewart v. Coughlin*, No. 3:20-CV-

19

00497-M, 2023 WL 121989, at *6 (N.D. Tex. Jan. 6, 2023). Instead, Plaintiff has raised the unique argument that the City operates with an intentional unspoken policy to withhold exculpatory evidence from unnamed individuals or institutions "for years at a time" and "for the sole purpose" of artificially lengthening criminal prosecutions (Dkt. #38 at p. 5 n.3).

It is not enough that Plaintiff has offered an opinion about a hypothetical custom or unwritten policy, as a plaintiff cannot simply wish or will a custom into existence—rather, "[f]or a *Monell* claim to survive a motion to dismiss, the plaintiff must plead specific facts about the alleged policy or custom." *Banks v. Howard County*, No. 1:19-CV-217-H, 2020 WL 5038613, at *5 (N.D. Tex. Aug. 26, 2020) (citing *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020)). The first requirement of a *Monell* custom claim requires Plaintiff to plead facts that demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. The relevant pattern must meet the parallel standards of "similarity and specificity; 'prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (citation modified) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Finally, the "pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

To support the existence of a sufficient *Monell* "custom," Plaintiff alleges that the relevant "*Brady* non-disclosure custom is well known in the Metroplex and several legal cases and news reports detail instances where the Lake Dallas Police Department in Texas has been accused of failing to disclose *Brady* information, mishandling exculpatory evidence, and omitting evidence or facts." (Dkt. #38 at ¶ 16). A total of three concrete examples accompany this generalization: (a) a

murder case that was dismissed after a state district court judge ruled that the Lake Dallas Police Department had erroneously destroyed evidence and failed to disclose two terabytes of evidence in a timely manner; (b) a sexual assault case that resulted in a plea deal after evidence was left in an unsecured police storage area and affected the chain of custody; and (c) Noseff's prior threat to "slant" grand jury testimony in a case involving a bar shootout between two individuals. (Dkt. #38 at ¶¶ 17–19).

Even when viewed in a light most favorable to Plaintiff, Plaintiff has failed to satisfy the first prong of his *Monell* claim against Defendant City of Lake Dallas. All three examples taken together at this stage of the case are insufficient to establish a pattern or custom that "fairly represents municipal policy." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam), *on reh'g*, 739 F.2d 993 (5th Cir. 1984)). "Although courts have acknowledged that there are no 'bright-line rules for establishing what constitutes a widespread custom or practice,' it has been found insufficient when only a few incidents are alleged." *Cummings v. Bexar County*, No. 5:17-CV-783-XR, 2018 WL 5622291, at *10 (W.D. Tex. Oct. 30, 2018) (quoting *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014)).

First, the examples do not collectively meet *Monell's* "similarity and specificity" requirements, as they address a wide variety of evidentiary failures over multiple types of cases. The first example provides the most support for Plaintiff's alleged custom because it involves the destruction or withholding of evidence over a period of years (Dkt. #38-23 at p. 4). The second example, however, involves little more than a police department's use of an "unsecured" storage area for its evidence, and highlights the department's commitment to add "a digital locker system for evidence to reduce human error" (Dkt. #38-24 at p. 2). A news article highlighting a police

21

department's failure to adequately store information leading to a "chain of custody" issue provides little to no indication that a custom exists regarding the willful nondisclosure of exculpatory evidence for the sole purpose of artificially extending prosecutions. The third and final example involves Noseff's personal threat to "slant" a suspect's grand jury testimony after the detective allegedly "realized he knew the shooter's wife himself" (Dkt. #38-22 at p. 2). The evidence attached to Plaintiff's Second Amended Complaint makes no statement regarding the outcome of the case, whether the detective went through with his threat, or what connection the comment had to "withholding" (as opposed to tampering with) evidence to support a prolonged prosecution. While this incident may constitute an example of a specific detective's intent to tamper with evidence, it is far from indicative of any "pattern" or "custom" of the kind alleged by Plaintiff (Dkt. #38 at p. 5 n.3).

Second, there is nothing to indicate that the three examples are not simply isolated instances as opposed to examples of an underlying policy. Even after receiving leave to amend, Plaintiff has only succeeded in gathering a total of three examples spanning two years. This is particularly damaging to his *Monell* claim, as "'it is clear that a single incident—*or even three incidents*—do not suffice' to establish 'the kind of pervasive custom that would give rise to liability under . . . *Monell*.'" *Cummings*, 2018 WL 5622291, at *10 (W.D. Tex. Oct. 30, 2018) (citation modified) (emphasis added) (quoting *Wilson*, 742 F.3d at 780). Plaintiff's meager offering pales in comparison to the type of pleadings required to support a *Monell* claim against a Rule 12(b)(6) attack. *See, e.g.*, *Lewis v. Rosenberg Police Dep't*, No. 4:22-CV-02593, 2023 WL 3668536, at *19 (S.D. Tex. May 25, 2023) (granting a motion to dismiss a *Monell* claim because plaintiffs only offered six examples of abuse over four years, which "averages to less than two incidents a year [and] is not

22

sufficient to indicate a pattern or custom of abuse under *Monell*"); *see also Moreno v. City of Dallas*, 2015 WL 3890467 at *9 (N.D. Tex. June 18, 2015) (granting a motion to dismiss a *Monell* claim because "facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses"); *cf. Congious ex. rel. Hammond v. City of Fort Worth*, 690 F. Supp. 3d 571, 595 (N.D. Tex. 2023) (holding that a custom of unsafe conditions should survive a motion to dismiss because it was supported by "thirty-one instances of deficient supervision at Tarrant County Jail, three instances of deficient supervision in Plaintiff's specific jail unit, and twenty-three suspicious inmate deaths"), *motion for relief from judgment granted sub nom.*, No. 4:22-CV-00092-O, 2024 WL 3434571 (N.D. Tex. July 16, 2024).

Because Plaintiff has failed to state a valid *Monell* claim against Defendant City of Lake Dallas, his claims against it must be dismissed.

### III.    42 U.S.C. § 1983 Malicious Prosecution Under the Fourth Amendment

Plaintiff casts a wide net under his 42 U.S.C. § 1983 malicious prosecution claim and applies it to "Defendants" as a whole (Dkt. #38 at ¶¶ 88–94). However, because Plaintiff has failed to raise a valid *Monell* claim, the Court will only address the application of this cause of action as to Defendants Weinstein, Noseff, Hall, and Byrd. *Borroto v. Wilson*, 138 F.3d 951, at *3 (5th Cir. 1998) (per curiam) ("A city can be liable under § 1983 if its official policy or custom deprives a person of a federally protected right . . . .").[3]

---

[3] Although the City of Denton challenges any application of this claim to Weinstein under the relation-back doctrine, the Court finds no statute of limitations issue as to this specific cause of action. A Fourth Amendment malicious prosecution claim "does not accrue until the underlying criminal proceeding is terminated in the plaintiff's favor." *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991). Further, in Texas, the two-year statute of limitations applies to Fourth Amendment claims under § 1983. *See, e.g., Barfield v. Osbey*, No. 4:24-CV-2581, 2025 WL 816718, at *3 (S.D. Tex. Mar. 13, 2025). Plaintiff has pleaded facts to suggest that the relevant DWI charge was terminated in Plaintiff's favor in March 2024, and Plaintiff filed his original and Second Amended Complaint within the first half of 2025 (Dkt. #38 at ¶ 82). Thus, the Court declines to further opine on the potential application of the relation-back doctrine or the relevant statute of limitations.

### A.      Qualified Immunity

To establish liability under § 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, courts must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, courts must determine whether "the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Supreme Court instructs district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants assert that this cause of action turns on the second prong: whether Plaintiff has pleaded facts indicating that a defendant's actions violated a statutory or constitutional right that was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). To answer this question, the Court must first

24

determine whether Plaintiff had a "clearly established" right to be free from malicious prosecution under the Fourth Amendment during the challenged conduct. If such a right existed at that time, the Court will be tasked with determining whether the challenged conduct as pleaded constitutes a violation of Plaintiff's statutory or constitutional rights.

The Court begins its analysis by addressing the specific conduct at issue. Plaintiff's malicious prosecution claim stands on three allegations: that (a) he was seized multiple times between the year 2021 and 2024; that (b) "Weinstein . . . resumed prosecuting Plaintiff for the DWI . . . and refused to disclose the exculpatory DWI test results which showed that Plaintiff was not intoxicated"; and that (c) Defendants Noseff, Byrd and Hall "refus[ed] to disclose *Brady* information including the exculpatory DNA test results to Plaintiff or his criminal defense counsel from April 2022 until February 2024" (*See* Dkt. #38 at ¶¶ 28, 88). Thus, the Court must turn to relevant caselaw and ask whether Plaintiff had a clearly established right to be free from malicious prosecution under the Fourth Amendment between the years of 2021 and 2024.

Plaintiff asks the Court to begin and conclude its analysis of the "clearly established" issue by considering the Fifth Circuit's decision in *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018). In *Winfrey*, which was decided as far back as 2018, the Fifth Circuit hinted at the possibility of a Fourth Amendment malicious prosecution claim. There, the Fifth Circuit held that an officer "was not entitled to qualified immunity on summary judgment" because a complaint alleged that the officer had "violated the Fourth Amendment by signing objectively unreasonable arrest-warrant affidavits." *Id.* at 490. The Fifth Circuit noted that "on remand, both sides argued the Fourth Amendment malicious-prosecution issue, and the district court decided the case as a Fourth Amendment case." *Id.* at 491. It further emphasized that "although there is no 'freestanding

25

constitutional right to be free from malicious prosecution, the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example.'" *Id.* (citation modified) (quoting *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc)).

Although *Winfrey* addressed malicious prosecution under the Fourth Amendment, Plaintiff is incorrect in his assertion that *Winfrey* "clearly established" such a cause of action. In fact, the Fifth Circuit later recognized that *Winfrey* did not establish even the mere possibility of such a claim, as "Fifth Circuit case law between 2003 and 2021 explicitly denied the possibility of a constitutional malicious prosecution claim." *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (internal citations omitted) (affirming a district court's Rule 12 dismissal of a § 1983 claim based on qualified immunity related to a Fourth Amendment malicious prosecution theory "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of Castillo's alleged conduct in 2018 and 2019"). Between 2003 and 2021, the Fifth Circuit maintained that "[i]n so far as [a] defendant's bad actions (that happen to correspond to the tort of malicious prosecution) result in an unreasonable search or seizure, those claims may be asserted under § 1983 as violations of the Fourth Amendment. But that makes them Fourth Amendment claims cognizable under § 1983, not malicious prosecution claims." *Morgan v. Chapman*, 969 F.3d 238, 245–46 (5th Cir. 2020).

This line of reasoning was ultimately turned on its head on April 4, 2022, when the Supreme Court decided *Thompson v. Clark*, 596 U.S. 36 (2022). There, the Supreme Court plainly held that "litigants may bring a Fourth Amendment malicious prosecution claim under § 1983." *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (citing *Thompson*, 596 U.S. at 39). On

February 15, 2023, the Fifth Circuit decided *Armstrong* and found that the Supreme Court had outlined a "clear recognition of the constitutional tort of malicious prosecution" and had implicitly overruled its precedent to the contrary. 60 F.4th at 279; *see also Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024). The Fifth Circuit also used the *Armstrong* decision to clearly establish the six elements behind every Fourth Amendment malicious prosecution cause of action. *Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at *6 (5th Cir. Apr. 14, 2023) (unpublished) (citing *Armstrong* to note that "we recently recognized that *Thompson* overruled *Castellano* and reinstated our prior six-element malicious prosecution claim from *Gordy*").

The Court finds that Plaintiff's right to be free from malicious prosecution under the Fourth Amendment became clearly established when the Fifth Circuit identified the six-element test in *Armstrong*, in February of 2023. 60 F.4th at 279; *see Santander v. Salazar*, 133 F.4th 471, 483 (5th Cir. 2025) ("The alleged incident in this case occurred in July 2022, after *Thompson*, but months before *Armstrong*. Therefore, with regard to Santander's § 1983 malicious prosecution claim, Salazar could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate.").[4] As a result, Plaintiff is required to plead facts suggesting that the challenged conduct extended past the Fifth Circuit's *Armstrong* decision in February 2023. *See id.*

---

[4]   As discussed above, the Fifth Circuit's recognition of a separate and distinct cause of action for violation of the Fourth Amendment in *Castellano* and *Winfrey* does not change this fact. *See, e.g.*, *Green v. Thomas*, 129 F.4th 877, 885 (5th Cir. 2025) (dismissing a Fourth Amendment malicious prosecution claim after finding "no direct conflict" between *Winfrey*, 901 F.3d at 491 and *Espinal*, 96 F.4th at 749, and holding that "the rule of orderliness requires that we follow our circuit's precedent"). Rather, "*Castellano* still makes clear that § 1983 claims of 'lost constitutional rights are for [the] violation of rights locatable in constitutional text'—*i.e.*, not claims of malicious prosecution." *Folks v. Sainato*, No. CV 23-643, 2024 WL 2271668, at *6 (E.D. La. May 20, 2024) (quoting *Castellano*, 352 F.3d at 953–54).

Plaintiff has unquestionably pleaded facts that satisfy that burden—the challenged conduct goes far beyond February 2023, as Plaintiff has alleged that every Defendant withheld exculpatory information until either the end of 2023 or beginning of 2024 (*See* Dkt. #38 at ¶ 88). Defendants nevertheless argue that Plaintiff has not pleaded any facts to suggest he suffered a "threshold element of an unlawful Fourth Amendment seizure" after February 2023, as required by *Armstrong*. 60 F.4th at 278–79 ("Because a [Fourth Amendment malicious prosecution] claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." (quoting *Thompson*, 596 U.S. at 43 n.2)). This argument, however, is misplaced.

In the instant matter, Plaintiff was arrested three times, detained following an arraignment, and physically brought before a magistrate. First, Plaintiff was arrested on a DWI charge on April 7, 2021 (Dkt. #38 at ¶¶ 89, 78). Plaintiff's second arrest, for the sexual assault of a child, occurred on April 5, 2022 (Dkt. #38 at ¶ 78). The third arrest occurred when Plaintiff was walking home on January 3, 2024 (Dkt. #38 at ¶ 75). Plaintiff was arraigned on or around February 28, 2023, and subsequently detained in county jail from June 26, 2023 to June 28, 2023 (Dkt. #38 at ¶¶ 72–73). Plaintiff was also presented to a magistrate and bound over for trial on the DWI charge on August 10, 2023 (Dkt. #38 at ¶ 29). Because Plaintiff has alleged a violation of the Fourth Amendment "under" or through the tort of malicious prosecution, and because officers cannot be held to standards that have not yet been clearly articulated, Plaintiff's arrests on April 7, 2021 and April 5, 2022 cannot support his Fourth Amendment malicious prosecution cause of action. *See Salazar*, 133 F.4th at 483. However, because the Second Amended Complaint indicates that Plaintiff was arrested, detained, and presented to a magistrate following the February 2023 *Armstrong* decision,

28

he has pleaded facts that might support a claim for malicious prosecution under the Fourth Amendment notwithstanding Defendants' qualified immunity defense. *Cf., e.g.*, *Espinal*, 96 F.4th at 749 ("Espinal was arrested and indicted in 2020, when the constitutional malicious prosecution tort did not exist in our circuit."); *Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at \*6 (5th Cir. Apr. 14, 2023) (using the date of a defendant's arrest to determine whether a malicious prosecution claim was precluded by qualified immunity); *Limon v. City of Laredo*, No. 5:24-CV-113, 2025 WL 2208851, at \*6 (S.D. Tex. Aug. 4, 2025) (dismissing a malicious prosecution claim because a district attorney rejected the charges for a plaintiff's prosecution in 2022, which was "after *Thompson* but before *Armstrong*" (quoting *McDonough v. Smith*, 588 U.S. 109, 116 (2019))).

The final portion of the Court's qualified immunity analysis asks whether Plaintiff has sufficiently alleged that any Defendant's actions violated the clearly established constitutional right to be free from malicious prosecution under the Fourth Amendment. In *Armstrong*, the Fifth Circuit held that a Fourth Amendment malicious prosecution claim must be supported by evidence of six elements: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." 60 F.4th at 279. If Plaintiff's claims are supported by facts that are pleaded with sufficient particularity to indicate a constitutional violation, they will survive Defendants' qualified immunity defense and motions to dismiss. *Estate of Davis*, 406 F.3d at 380 n.19 ("[C]ourts are well-advised to separate 'qualified immunity' analysis from 'merits' analysis whenever practicable. In some circumstances, however, these inquiries overlap." (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998))); *Jacquez v. Procunier*, 801

29

F.2d 789, 791 (5th Cir. 1986) (plaintiffs are required to "plead facts with particularity before they may subject public officials to trial *or* the vagaries of modern pretrial discovery").

### 1.    Officer Weinstein's Qualified Immunity

Officer Weinstein has not asserted qualified immunity in any pleading. Because qualified immunity must be invoked by a party to be considered, and because no challenge to Officer Weinstein's liability under this cause of action has been raised, the Court will not rule on this issue. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)); *Harlow*, 457 U.S. at 815.

### 2.    Officer Noseff's Qualified Immunity

Plaintiff alleges that Noseff either commenced or continued an original criminal proceeding against him by (a) filing one or more false affidavits against Plaintiff on March and April 2022; and (b) "refusing to disclose *Brady* information including the exculpatory DNA test results to Plaintiff or his criminal defense counsel from April 2022 until February 2024" (Dkt. #38 at ¶¶ 55, 88). The Second Amended Complaint alleges that Plaintiff's prosecution for the sexual assault of a child was predicated on an arrest warrant signed by a magistrate (*See* Dkt. #38 at ¶ 56). It further alleges that a grand jury indicted Plaintiff on the same charge (Dkt. #38 at ¶ 68).

To succeed in stating an actionable claim for malicious prosecution under the Fourth Amendment, Plaintiff must allege specific facts related to Noseff's disclosures. *Malley v. Briggs*, 475 U.S. 335, 340–41 (1986) ("In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause."). These facts are necessary for Plaintiff to carry his burden regarding official immunity and the merits of the cause of action altogether. *See Young v. Biggers*, 938 F.2d 565, 570 n.9 (5th Cir. 1991) ("[O]fficers are not entitled to qualified immunity if

30

[a plaintiff] can prove that they knowingly presented false information in the affidavit for his arrest warrant."); *see, e.g.*, *Fondon v. Water Valley Hous. Auth.*, No. 3:25-CV-276-DMB-RP, 2025 WL 3854998, at *2 (N.D. Miss. Nov. 12, 2025) ("In the absence of factual allegations supporting each . . . element[], the plaintiff's complaint fails to state a claim for Fourth Amendment malicious prosecution."), *report and recommendation adopted*, No. 3:25-CV-276-DMB-RP, 2026 WL 30641 (N.D. Miss. Jan. 5, 2026).

Here, Plaintiff alleges that Noseff intentionally filed three false affidavits against him: (1) the March 9, 2022 arrest warrant affidavit; (2) the March 30, 2022 search warrant affidavit; and (3) the April 7, 2022 search warrant affidavit (Dkt. #38 at ¶¶ 39, 43, 47). The issue with each affidavit is readily apparent from the Court's initial description alone: Noseff filed all three affidavits almost a year before Fourth Amendment malicious prosecution claims were "clearly established" by *Armstrong* in February 2023, which bars them from acting as support for Plaintiff's Fourth Amendment malicious prosecution claim.[5] This finding aligns with the Fifth Circuit's decision in *Guerra*, where it held that an officer who was separately liable for "push[ing] subordinates to file false affidavits" was not independently liable for malicious prosecution under the Fourth Amendment, "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [the officer's] alleged conduct." 82

---

[5]  The Court distinguishes this finding from the Fifth Circuit's decision in *Winfrey*, where it found that an officer was not entitled to qualified immunity because a plaintiff had alleged a clearly established constitutional violation "that [the officer] violated the Fourth Amendment by signing objectively unreasonable arrest-warrant affidavits." 901 F.3d at 491. In that case, the Fifth Circuit only went so far as to rule that the relevant claim was "more like the tort of malicious prosecution," and that the claim merely "suggests malicious prosecution" under the Fourth Amendment. *Id.* at 493. Here, Plaintiff's Second Amended Complaint does much more than "suggest" malicious prosecution — it makes an express claim for malicious prosecution under the Fourth Amendment and avoids any allegation as to the reasonableness of the affidavits involved (*See* Dkt. #38 at ¶ 55). This analysis preserves the Fifth Circuit's recent and unequivocal holding that even "months before *Armstrong*. . . . there was no clearly established law in this circuit to violate" regarding a "Fourth Amendment malicious prosecution claim." *Salazar*, 133 F.4th at 483.

F.4th at 289. But even if Noseff had filed the affidavits after the *Armstrong* decision, Plaintiff's claim would still run aground on the merits of the cause of action.

Noseff argues that Plaintiff has not alleged sufficient facts to support what the Supreme Court has termed "the gravamen of the Fourth Amendment claim for malicious prosecution[:] . . . the wrongful initiation of charges *without probable cause*." *Thompson*, 596 U.S. at 43 (emphasis added). "For purposes of malicious prosecution, probable cause means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Eason v. City of Senatobia*, 776 F. Supp. 3d 492, 505 (N.D. Miss. 2025) (quoting *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002)).

Typically, the fact that both an independent magistrate and grand jury elected to take prosecutorial action against Plaintiff would insulate Noseff from liability under the independent intermediary doctrine. *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) ("[E]ven an officer who acted with malice . . . will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury . . . ." (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). However, because Plaintiff has alleged that Noseff intentionally or recklessly provided false information in his communications with the magistrate and grand jury to secure Plaintiff's prosecution, the independent intermediary doctrine will not protect Noseff without further analysis. *See Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

Instead, the Court must analyze Plaintiff's "specific examples of misstatements and omissions" and determine "whether probable cause existed" to arrest or indict Plaintiff for the sexual assault of a child "even without the erroneous statements and omissions in the affidavit."

32

*Hughes v. Garcia*, 100 F.4th 611, 620, 623 (5th Cir. 2024). Pertinent to this analysis is Plaintiff's allegations that all three affidavits were tainted by the following issues:

(a)    Noseff's failure to mention the existence of a DNA report which only contained evidence of H's consensual sexual encounter with another individual that had occurred "immediately prior to the alleged assault" (Dkt. #38 at ¶¶ 39, 68);

(b)    The absence of any reference to the consensual sexual activity H participated in "immediately prior to the alleged assault" (Dkt. #38 at ¶ 39);

(c)    Noseff's claim that, when Plaintiff asked if H "liked black guys," H replied "it does not matter" or that she "did not know" instead of "yeah" (Dkt. #38 at ¶¶ 40, 44);

(d)    Noseff's claim that H "was given" alcohol and drugs prior to the sexual assault (Dkt. #38 at ¶ 39);

(e)    Noseff's inconsistent report that she was sitting or laying on a bed prior to the alleged assault (Dkt. #38 at ¶ 40); and

(f)    Noseff's inconsistent report that H was wearing either pants or shorts at the time of the alleged assault (Dkt. #38 at ¶ 45).

After viewing the available facts in a light most favorable to Plaintiff and accounting for all false statements and omissions in the affidavits, the Court finds that the Second Amended Complaint does not sufficiently allege that any party, including the magistrate and grand jury, lacked probable cause to prosecute Plaintiff for the sexual assault of a child.

In *Travis v. City of Grand Prairie*, 654 F. App'x 161 (5th Cir. 2016) (per curiam) (unpublished), the Fifth Circuit held that a report specifically naming the perpetrator constitutes probable cause to arrest the named individual. *Id.* at 165 ("Travis was arrested pursuant to Castaldo's report that Travis had sexually assaulted her. This report alone was sufficient to give the officers probable cause for arrest."). Under this precedent, H's detailed report to the North Texas Children's Advocacy Center (which specifically named Plaintiff as the assailant) created probable cause to search and arrest Plaintiff. *See id.*; *Johnson v. Bryant*, No. 94-10661, 1995 WL 29317, at *3

(5th Cir. Jan. 17, 1995) (per curiam) (unpublished) ("A victim's accusation identifying an individual as a perpetrator is generally sufficient to establish probable cause."). Furthermore, the DNA test results are not sufficient to negate the probable cause created by H's report to the sexual assault nurse examiner, as the nature of her alleged sexual assault does not lend itself to DNA evidence.[6] Finally, the fact that H may have responded differently to a question regarding her racial preferences prior to the alleged sexual assault does not change the fact that she reportedly "told him to stop and that she did not want this to happen, and he just kept going" (Dkt. #38-5 at pp. 2–3).

Because probable cause supported Plaintiff's prosecution for the sexual assault of a child notwithstanding Noseff's factual inconsistencies and omissions, Plaintiff cannot bring a malicious prosecution claim against Noseff. *See Armstrong*, 60 F.4th at 279 n.15 ("[I]f the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward."); *see, e.g.*, *Thornton v. Lymous*, 489 F. Supp. 3d 470, 494 (E.D. La. 2020) (granting a Rule 12(b)(6) motion to dismiss where "even considering the credibility issues implied by Plaintiff's alleged omissions, the Affidavit contained ample evidence from independent sources to support a finding of probable cause"), *aff'd*, 850 F. App'x 320 (5th Cir. 2021).

Plaintiff's second contention is that Noseff "gave false testimony against Plaintiff to the grand jury by hiding exculpatory evidence" (Dkt. #38 at ¶ 77). This allegation relates to Noseff's alleged refusal or failure to "disclose *Brady* information including the exculpatory DNA test results to Plaintiff or his criminal defense counsel" (Dkt. #38 at ¶ 22). However, even when taken as true and viewed in a light most favorable to Plaintiff, there is no indication that Noseff's "refusal" or

---

[6]   H specifically alleged that Plaintiff "sexually assaulted her by digital penetration" (Dkt. #38 at ¶ 40). The Second Amended Complaint does not indicate why the absence of any DNA identification of Plaintiff would defeat the probable cause created by the victim's direct identification under these facts.

"failure" to disclose "*Brady* information including the exculpatory DNA test" to Plaintiff or Plaintiff's counsel implicates Plaintiff's clearly established right to be free from malicious prosecution under the Fourth Amendment (Dkt. #38 at ¶ 88).

The Supreme Court has previously held that "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Fifth Circuit has reinforced and expanded upon this concept in its own rulings, later holding that "neither police officers nor lab technicians have a *Brady* duty to disclose exculpatory information." *Mowbray v. Cameron County*, 274 F.3d 269, 278 (5th Cir. 2001). While this Circuit recognizes that an officer "cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence," Plaintiff's charges in his federal pleadings do not even raise conclusory allegations that Noseff committed either action. *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988). Instead, Plaintiff vaguely alleges that Noseff did not disclose the DNA report to Plaintiff or his counsel directly, which is not sufficient to defeat a Rule 12(b)(6) challenge.[7]

The Fifth Circuit's opinion in *Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008), is especially instructive on the concealment and disclosure distinction. There, the Fifth Circuit referenced the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), which held "that a criminal prosecutor's failure to disclose exculpatory evidence to a criminal defendant violates a defendant's right to a fair trial." *Brown*, 519 F.3d at 237 (citing *Brady*, 373 U.S. at 86–87). The Fifth Circuit proceeded to distinguish the prosecutorial duty to disclose exculpatory evidence and an officer's

---

[7]   Plaintiff is not permitted to "transform the absence of an allegation into an affirmative assertion. To state a claim, [Plaintiff] must affirmatively plead specific facts that [a defendant] intentionally suppressed . . . evidence." *Brown v. Williams*, No. CV 24-423, 2025 WL 958219, at *7 (E.D. La. Mar. 31, 2025).

35

duty to refrain from deliberate concealment of such evidence, holding that "[a] police officer's deliberate concealment of exculpatory evidence violates this same right, and can give rise to liability under § 1983." *Id.* at 238. Here, Plaintiff alleges that Noseff violated his constitutional rights because Noseff did not carry the prosecutorial duty to disclose, as distinguished from his duty to refrain from intentionally concealing, suppressing, or destroying exculpatory evidence. *See Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 573 n.4 (M.D. La. 2007) (denying a motion to dismiss because "Bibbins does not claim that [an officer] failed to disclose the state crime lab report to his counsel, but rather that she failed to disclose this exculpatory evidence to the prosecuting attorney at the time of his trial."). Plaintiff's pleading language is likely intentional, as the DNA report itself indicates that it was "issued via email to . . . DA Denton" (Dkt. #38-20 at p. 3). *Cf. Williams v. Connick*, No. CIV.A. 12-1274, 2014 WL 172520, at *10 (E.D. La. Jan. 15, 2014) (imposing liability on a police officer who failed "*to produce to the prosecution* evidence favorable to [the plaintiff]" (emphasis added)).

To address the matter from a slightly different angle, the Court turns its attention once again to the Fifth Circuit's *Armstrong* opinion. There, the Fifth Circuit considered a plaintiff's allegations that multiple officers "knowingly and deliberately failed to provide [exculpatory evidence] to [plaintiff], his defense attorneys, or prosecutors." *Armstrong*, 60 F.4th at 270. The Fifth Circuit ultimately affirmed a district court's decision to dismiss a plaintiff's malicious prosecution claim, holding that the plaintiff's "only non-conclusory factual allegation of suppression is that [plaintiff] and his counsel did not receive the reports during . . . trial" and that the "allegations do not distinguish the perpetrators." *Id.* at 270–71. Plaintiff's Fourth Amendment malicious prosecution claim against Noseff must be dismissed for the same reasons. Not only has Plaintiff failed to allege

that the DNA report was concealed from the prosecuting attorneys, but "without pleading details about how and by whom" the DNA report was concealed, Plaintiff has simply failed to state a claim for malicious prosecution under the Fourth Amendment against Noseff. *Id.* at 271.

Finally, the Court notes that Plaintiff has not alleged that Noseff interacted with or otherwise provided false testimony to the grand jury directly, and does not cite any case involving a police officer's failure to approach or present exculpatory evidence to a grand jury despite first disclosing such evidence to the prosecuting attorney.[8] Because Plaintiff has not alleged any specific facts related to Noseff's interactions with the prosecutor, the grand jury, or the DNA report itself, Plaintiff has failed to sufficiently allege that Noseff's actions led to a violation of Plaintiff's constitutional right to be free from malicious prosecution under the Fourth Amendment. *See Armstrong v. City of Shreveport*, 532 F. Supp. 3d 341, 354 (W.D. La. 2021) ("Without further proof that the Law Enforcement Defendants were the cause of the legal action taken against Ford, the . . . malicious prosecution claim must be dismissed."), *aff'd sub nom.*, *Armstrong*, 60 F.4th 262.

### 3.    Officer Byrd and Hall's Qualified Immunity

Plaintiff centers his Fourth Amendment malicious prosecution claim against Byrd and Hall on the second allegation he raised against Noseff: that they "refus[ed] to disclose *Brady* information including the exculpatory DNA test results to Plaintiff or his criminal defense counsel from April 2022 until February 2024" (Dkt. #38 at ¶ 88). Because the Court has already ruled that a

---

[8]  Cases addressing this specific circumstance are few and far between, and often assume that the officers in question provided testimony to the grand jury:

> The Court could also not locate any cases—Tenth Circuit or otherwise—which addressed whether an officer, having reported all relevant information to the prosecuting attorney and not having made any false or misleading representations, can nevertheless still be held liable under § 1983 for his failure to mention exculpatory evidence in his grand jury testimony.

*Zamora v. City of Belen*, 383 F. Supp. 2d 1315, 1335 n.2 (D.N.M. 2005).

generalized, unsupported claim that an officer did not disclose exculpatory evidence to a criminal defendant or their counsel is insufficient to permit a malicious prosecution claim to survive a motion to dismiss, Plaintiff has not sufficiently alleged that any action by Byrd or Hall resulted in a violation of his right to be free from malicious prosecution under the Fourth Amendment. In other words, Plaintiff has not sufficiently alleged that Byrd or Hall's actions willfully and maliciously caused the detention or prosecution of Plaintiff without probable cause, and thus his malicious prosecution claim against each Defendant must be dismissed.

## IV.    42 U.S.C. § 1983 False Arrest Under the Fourth Amendment

Plaintiff raises an additional cause of action against Weinstein and the City of Denton under the Fourth Amendment (Dkt. #38 at ¶ 116).[9] Specifically, Plaintiff alleges that both Defendants are liable for false arrest, which requires Plaintiff to show (1) willful detention, (2) without consent, and (3) without authority of law. *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir. 1989). Because the Court has already dismissed the City of Denton pursuant to Plaintiff's insufficient *Monell* claim, it must only determine whether Plaintiff has pleaded a valid claim for false arrest under the Fourth Amendment as to Weinstein.

According to the Second Amended Complaint, Weinstein arrested Plaintiff on April 7, 2021, after Plaintiff failed to drive at an appropriate speed and/or effectively utilize his turn signal (*See* Dkt. #38 at ¶¶ 24–25). Plaintiff argues that a blood test taken within a day of his arrest proves the absence of probable cause for his DWI arrest and subsequent criminal proceeding (Dkt. #38 at

---

[9] Weinstein and the City of Denton are the only two parties listed under the relevant section of Plaintiff's Second Amended Complaint. To the extent that Plaintiff raises any hypothetical false arrest claim related to Noseff, Byrd, or Hall, they are rightly dismissed pursuant to the Court's statute of limitations analysis as presented under the false imprisonment portion of this Memorandum Opinion and Order.

¶ 27). Plaintiff alleges that the blood test indicated that he did not have alcohol in his system, and that it was received by Weinstein almost one month after he was arrested (Dkt. #38 at ¶ 27).

In determining the validity of Plaintiff's false arrest claim, the Court first addresses the issue of probable cause. *Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017) (holding that "[t]o survive a motion to dismiss" in the context of a false arrest claim, a plaintiff must allege facts that show an officer "lacked probable cause to arrest him" (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001))). Plaintiff has alleged two facts to indicate that Weinstein lacked sufficient probable cause to arrest him for DWI: that the blood test indicated Plaintiff was not intoxicated at the time of the arrest, and that he was showing "no physical signs of intoxication" (Dkt. #38 at ¶¶ 25, 27). The Court finds that these facts, when taken as true and viewed in a light most favorable to Plaintiff, are enough to support his false arrest claim against Weinstein at this stage.

The Court's analysis cannot end there, however, as the City of Denton raised an additional challenge to Plaintiff's false arrest claim: the statute of limitations. Claims for false arrest under § 1983 must be brought within two years of the date of accrual. *Jacobs v. Port Neches Police Dep't*, No. 1:94-CV-767, 1996 WL 363023, at *5 (E.D. Tex. June 26, 1996); *Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023) (holding that a "false arrest claim accrues when charges are filed"). Here, Plaintiff expressly limits his false arrest claim to his DWI arrest on April 7, 2021 (Dkt. #38 at ¶ 110). Because Plaintiff did not file the present lawsuit until February 6, 2025, the accrual date of Plaintiff's Fourth Amendment false arrest claim is crucial to his potential recovery under this cause of action.

Plaintiff argues that false arrest claims under § 1983 accrue when an individual is indicted rather than when they are arrested, and relies on two cases to support his legal interpretation:

39

*Wallace v. Kato*, 549 U.S. 384 (2007), and *Humphreys v. City of Ganado, Texas*, 467 F. App'x 252 (5th Cir. 2012) (per curiam) (unpublished). In *Wallace*, the Supreme Court determined that a plaintiff's § 1983 false arrest/false imprisonment claim[10] accrued and "commenced to run when he appeared before the examining magistrate and was bound over for trial." 549 U.S. at 391. The Supreme Court explained its decision by noting that "false imprisonment consists of detention without legal process, [such that] a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. at 389. At the end of the opinion, the Supreme Court once again reiterated that the "statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes *detained pursuant to legal process*." *Id*. at 397 (emphasis added). The Fifth Circuit followed this line of reasoning in *Humphreys*, where it cited *Wallace* to find that a plaintiff's "[Section 1983] claim for false arrest began running, at the latest, when he was indicted." 467 F. App'x at 256 (citing *Wallace*, 549 U.S. at 391).

Plaintiff's assertion that a false arrest claim accrues upon indictment is therefore technically correct, but only insofar as the two-year statute of limitations on false arrest and imprisonment claims begins to run at the time at which the plaintiff is "detained pursuant to legal process, and not . . . when he [is] released." *Manuel v. Lehmberg*, 690 F. App'x 245, 247 (5th Cir. 2017) (per curiam) (unpublished). The relevant time is variable, as detention pursuant to legal process can take on many forms in the criminal justice system. For example, "[b]eing bonded to appear is

---

[10] *Wallace*, 549 U.S. at 389 ("False arrest and false imprisonment overlap; the former is a species of the latter. . . . [w]e shall thus refer to the two torts together as false imprisonment."). *But see Whirl v. Kern*, 407 F.2d 781, 790 (5th Cir. 1968) (explaining the subtle differences between false arrest and false imprisonment claims).

sufficient legal process to begin running the statute of limitations under a Fourth Amendment false arrest claim." *Laborde v. Lunceford*, No. 6:10CV30, 2010 WL 3238311, at *3 (E.D. Tex. Aug. 13, 2010). Being arrested and imprisoned under an active warrant is similarly sufficient to activate the applicable statute of limitations for false arrest claims. *See, e.g.*, *Garcia v. San Antonio, Tex.*, 784 F. App'x 229, 232 (5th Cir. 2019) (per curiam) (unpublished).

Plaintiff's allegations indicate that his DWI arrest on April 7, 2021 was made without a warrant (Dkt. #38 at ¶ 25). Plaintiff's initial arrest is therefore insufficient to support a finding that Plaintiff was "held pursuant to legal process" by itself. *See id.* However, Plaintiff received a personal recognizance bond under a pending DWI charge and bonded out of jail the next day, on April 8, 2021 (*See* Dkt. #38 at ¶ 26; Dkt. #38-8 at p. 2). This date is significant, as Plaintiff's ability to bond out of jail is typically indicative of the fact that he experienced legal process while in custody. *See Jeanty v. TXFM, Inc.*, No. 4:19-CV-366, 2020 WL 5797781, at *3 (E.D. Tex. Sept. 29, 2020) ("Plaintiff was able to bond out of jail on November 13, 2015. Thus . . . the latest Plaintiff's false arrest claims could begin to accrue was November 13, 2015—the date he bonded out." (internal citation omitted)), *clarified on denial of reconsideration*, No. 4:19-CV-366, 2020 WL 10045957 (E.D. Tex. Dec. 1, 2020).

However, Plaintiff's Second Amended Complaint expressly states that "Plaintiff was not presented before an examining magistrate to be bound over for trial on the DWI charge until at least August of 2023" (Dkt. #38 at ¶ 107). This line of reasoning is repeated in one of the many responses filed to Defendants' motions to dismiss: "[t]here is nothing showing a presentment before a magistrate to be bound over for trial prior to February 24, 2023" (Dkt. #39 at p. 19). While absence of evidence is not evidence of absence, the Second Amended Complaint contains an attached "jail

41

records search detail" sheet which indicates that there was no "Issuing Auth[ority]" related to his personal recognizance bond on April 7, 2021 (Dkt. #38-8 at p. 2). Because it is possible that Plaintiff returned home on bond without first appearing in front of a judicial body, Plaintiff has pleaded sufficient facts to survive a motion to dismiss on statute of limitations grounds. *See, e.g.*, *Wright v. Reynolds*, 703 F. Supp. 583, 585 (N.D. Tex. 1988) ("Wright was never taken before a judge or magistrate of Runaway Bay. The decision to release Wright on a personal recognizance bond apparently was made by the Runaway Bay police!"); *Swoboda v. Manders*, No. CV 14-19-SCR, 2015 WL 5768962, at *3 (M.D. La. Sept. 30, 2015) (holding that a plaintiff failed to allege that any "specific court-related process or proceeding was used" against him despite his claim that he was held in a detention center and eventually released on bail).

## V.    42 U.S.C. § 1983 False Imprisonment Under the Fourth Amendment

Plaintiff raises additional Fourth Amendment claims against Noseff, Byrd, Hall, and the City of Lake Dallas. As with Plaintiff's false arrest claims, however, the Court has already found that Plaintiff has not pleaded a valid *Monell* claim against the relevant municipality. Thus, the Court is tasked only with examining the Second Amended Complaint in search of enough well-pleaded facts to support Plaintiff's § 1983 false imprisonment claims as to Noseff, Byrd, or Hall.

Plaintiff's false imprisonment cause of action seeks to remedy his incarceration for the alleged sexual assault of a child because he was "falsely imprisoned for 128 days," from April 5, 2022 until August 11, 2022 (Dkt. #38 at ¶ 99). The Court's analysis opens with its consideration of the applicable statute of limitations. The Court has already noted that § 1983 claims for false arrest and false imprisonment alike must be brought within two years of the date of accrual. *See Onyinyechi v. B.A. Ridings*, No. CV H-18-1294, 2018 WL 11469559, at *2 (S.D. Tex. Aug. 13, 2018), *aff'd sub nom.*, *Onyinyechi v. Ridings*, 786 F. App'x 503 (5th Cir. 2019). The statute of limitations

42

for both claims similarly "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. This legal precedent constitutes an impenetrable barrier to Plaintiff's recovery on his false imprisonment claims.

Plaintiff's April 5, 2022 arrest was the result of an allegedly "improperly obtained arrest warrant" on April 5, 2022 (Dkt. #38 at ¶ 58; Dkt. #38-12 at p. 2). Plaintiff was ultimately able to post bond and was released on August 11, 2022 (Dkt. #38 at ¶¶ 61, 64). The "jail records search detail" sheet attached to Plaintiff's Second Amended Complaint indicates that the issuing authority of Plaintiff's bond was the "Justice of the Peace Pct #1" (Dkt. #38-8 at p. 2). Because "[t]he Justice of the Peace is a magistrate" and Plaintiff bonded out of jail on August 11, 2022, Plaintiff's false arrest claim began to accrue on August 11, 2022 at the latest. *Schmidt v. State*, 449 S.W.2d 39, 41 (Tex. Crim. App. 1969); *Jeanty*, 2020 WL 5797781, at *3. Plaintiff's February 6, 2025 complaint was not filed within the applicable two-year statute of limitations, and thus cannot carry a false imprisonment claim related to the April 5, 2022 arrest. *See Roe v. United States*, 839 F. App'x 836, 845 (5th Cir. 2020) (per curiam) (unpublished) (holding that a plaintiff's "false imprisonment ended once he was released on bond").

Furthermore, even if Plaintiff had instead centered his false arrest claims on his momentary detainment in county jail from June 26, 2023 to June 28, 2023, or on the day of January 3, 2024, his cause of action would remain unavailable (Dkt. #38 at ¶¶ 75, 72–73). Because the Court has already held that probable cause existed to arrest Plaintiff for the sexual assault of a child, Plaintiff "was not falsely imprisoned because he was held under authority of law" in those instances. *Moore v. City of Desoto*, No. 3:09-CV-0710-K, 2010 WL 3855306, at *3 (N.D. Tex. Sept. 29, 2010), *aff'd*,

450 F. App'x 341 (5th Cir. 2011). Thus, Plaintiff has not pleaded sufficient facts to support his false imprisonment claims, and they must be dismissed.

**VI.    42 U.S.C. § 1983 Due Process Right to Liberty Violation Under the Fourteenth Amendment**

Plaintiff describes his Fourteenth Amendment cause of action as follows: "Defendants, acting under color of law, violated Plaintiff's due process right to liberty under the Fourteenth Amendment by arresting Plaintiff without a search warrant and without probable cause . . . [there]by restraining Plaintiff's liberty through detention and unlawful restraint without legal authority or justification . . . ." (Dkt. #38 at ¶ 107). Plaintiff alleges that his liberty was jeopardized even though "the May 1, 2021 blood test and April 2022 DNA test proved Plaintiff was innocent of any crime" (Dkt. #38 at ¶ 107).

A claim under the Fourteenth Amendment can proceed under substantive due process or procedural due process. *See Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013) (per curiam) (unpublished). Here, Plaintiff generally alleges violations of the Fourteenth Amendment without specifically categorizing them. In the interest of fairness, the Court analyzes both potential avenues of recovery under the applicable lenient 12(b)(6) standard.

Plaintiff has no road to recovery under the substantive due process protections provided by the Fourteenth Amendment. Although "[t]he Fourth and Fourteenth Amendments guard against arrest without probable cause," *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988), a "resort to a generalized remedy under the Due Process Clause is inappropriate where a more specific constitutional provision provides the rights at issue." *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020). "In those situations, the specific provision, 'not the more generalized notion of 'substantive due process,' better guides analysis of plaintiff's claims.'" *Id.* (quoting *Albright v.*

44

*Oliver*, 510 U.S. 266, 273 (1994)). Furthermore, "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment," not in the due process clause. *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). To the extent that Plaintiff has pleaded a substantive due process violation based upon his allegedly unlawful pretrial detention and restraint, Plaintiff has failed to state a clam under the Fourteenth Amendment. *Foster v. Covington County*, No. CIVA 2:04CV343KS-MTP, 2007 WL 313059, at *4 (S.D. Miss. Jan. 30, 2007) ("[T]his court recognizes, as has the Fifth Circuit, that the Supreme Court has held that pretrial deprivations of liberty are actionable only under the Fourth Amendment and not under the substantive due process guarantees of the Fourteenth Amendment." (first citing *Albright*, 510 U.S. at 266; then citing *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299 (5th Cir. 1995))); *see also Griffin v. City of Sugar Land*, No. CV H-18-3121, 2019 WL 175098, at *4 (S.D. Tex. Jan. 11, 2019) ("Griffin's allegations that he was 'unlawfully detained, arrested and searched by defendant Young without consent, warrant, probable cause, reasonable suspicion, or any other lawful reason' . . . raise claims that must be analyzed under the Fourth—not the Fourteenth—Amendment."), *aff'd sub nom.*, 787 F. App'x 244 (5th Cir. 2019).

Plaintiff has similarly failed to state a claim under the procedural due process protections provided by the Fourteenth Amendment. The Fourteenth Amendment's procedural component "guarantee[s] fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). While "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment," Plaintiff has not alleged that any Defendant was a prosecutor or that a specific Defendant suppressed or destroyed evidence that would have

otherwise been available to a prosecutor. *Brady*, 373 U.S. at 87. And even if Plaintiff had alleged either of those circumstances, the Second Amended Complaint would remain barren of any specific facts to support them. Plaintiff instead asserts a generalized complaint that a variety of non-prosecutor Defendants "hid" evidence from him and his counsel simply because Plaintiff did not receive them (*See* Dkt. #38 at ¶¶ 106, 107). Such vague generalizations, even if true, are insufficient to state a claim under the procedural due process aspect of the Fourteenth Amendment. As a result, Plaintiff's Fourteenth Amendment claims must be dismissed.

## VII.    42 U.S.C. § 1983 Violation Under the Sixth Amendment

Plaintiff alleges that Defendants Noseff, Byrd, Hall and City of Lake Dallas denied "Plaintiff his Sixth Amendment right to a public trial without unnecessary delay with deliberate indifference" because of the aforementioned nondisclosure of the DNA report (*See* Dkt. #38 at ¶ 102). However, both the Court and Plaintiff himself considers this claim particularly ill-pleaded: "Plaintiff here concedes that his 6th Amendment claim may be malformed based on the case law. However, all his other claims are not only viable but are well plead" (Dkt. #36 at p. 17). The Court finds Plaintiff's critique of his own Sixth Amendment claim well-founded, as a Sixth Amendment violation regarding the right to a speedy trial requires facts to support a "presumptively prejudicial" delay and a balancing test. *See Speer v. Lumpkin*, 824 F. App'x 240, 244 (5th Cir. 2020) (per curiam) (unpublished).

Plaintiff neither defends nor presents any clear factual allegations in support of his claim for a violation of the Sixth Amendment. As a result, Plaintiff has not carried his burden to prove that a police officer's act of withholding information from Plaintiff or his attorney was a "clearly established" violation of the Sixth Amendment. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) ("Plaintiffs do not identify a single case to support the[ir] argument . . . . [i]n

46

fact, they do not make any arguments as to the clearly established law."). Because the facts of this case do not support a claim for the violation of the Sixth Amendment, Plaintiff's Sixth Amendment cause of action must be dismissed. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that a plaintiff abandoned one of her claims upon her failure to defend it in response to a motion to dismiss).

## VIII.   Official Capacity Claims

Plaintiff's Second Amended Complaint also attempts to sue Noseff, Byrd, and Hall "in both their individual and official capacities as . . . officers" (Dkt. #38 at ¶ 6).[11] As noted above, Plaintiff is also suing the City of Lake Dallas, which was their governmental employer at all relevant times (Dkt. #20 at p. 32). This is legally significant, as it is traditionally understood that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants argue that Plaintiff's suit against any individual party in their official capacity is redundant given the claims raised against City of Lake Dallas. The Court agrees, as "[i]n cases where the governmental entity itself is a defendant, claims against specific officials in their official capacities are redundant and it is appropriate to dismiss them." *Kinnison v. City of San Antonio*, No. CIV.A. SA-08-CA-421X, 2009 WL 578525, at *2 (W.D. Tex. Mar. 5, 2009); *see also Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of

---

[11] Defendant Weinstein has not been sued in his official capacity.

the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.").

Although Plaintiff attempts to circumvent Defendant's redundancy argument by referencing the relaxed standard afforded plaintiffs under Rule 12(b)(6), Plaintiff has not raised an argument to contravene the simple fact that "[c]ourts routinely dismiss official capacity claims as redundant in § 1983 actions." *Kinnison*, 2009 WL 578525, at *2 (first citing *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007); then citing *Van Horn v. Lopez–Beaver*, No. 3:06–CV–1734–L, 2007 WL 3224758, *4 (N.D. Tex. Oct.31, 2007); and then citing *Walton v. City of Milford*, No. 3:06–CV–2291–L, 2008 WL 631240, at *5 (N.D. Tex. Feb. 28, 2008)).

Because Plaintiff's claims against Defendants Noseff, Byrd, and Hall in their official capacities are redundant, they must be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint to add Required Party and to add Facts Based on New Evidence (Dkt. #34) is hereby **GRANTED**.

It is further **ORDERED** that:

(a)    Individual Defendants, Detective Greg Noseff, Officer Byrd, and Detective Hall's, Motion to Dismiss for Failure to State a Claim and Pursuant to their Qualified Immunity and Brief in Support Thereof (Dkt. #20);

(b)    Defendant City of Lake Dallas's Motion to Dismiss and Brief in Support Thereof (Dkt. #21);

(c)    Defendant City of Denton, Texas's Rule 12(b)(6) Motion to Dismiss Plaintiff Joseph Tarmo's First Amended Complaint (Dkt. #23); and

are hereby **GRANTED in part and DENIED in part**.

It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1983 Fourth Amendment malicious prosecution claims as to Defendants Noseff, Hall, Byrd, the City of Lake Dallas, and the City of Denton, Texas are **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1983 Fourth Amendment false arrest claim as to Defendant City of Denton, Texas is **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1983 Fourth Amendment false imprisonment claims as to Defendants Noseff, Hall, Byrd, and the City of Lake Dallas are **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1983 Fourteenth Amendment due process claims as to all Defendants are **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1983 Sixth Amendment claims as to Defendants Noseff, Byrd, Hall and the City of Lake Dallas are **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's claims against Defendants Noseff, Hall, and Byrd in their official capacities are **DISMISSED with prejudice**.

Accordingly, only Plaintiff's claims against Weinstein for malicious prosecution and false arrest under 42 U.S.C. § 1983 survive Defendants' motions to dismiss.

**IT IS SO ORDERED.**

 **SIGNED this 20th day of March, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

49